UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| MEADWESTVACO CORPORATION, *et al.* | ) | |
| | ) | |
| *Plaintiffs* | ) | Misc. Case No. _____ |
| | ) | |
| *v.* | ) | Subpoena in Civil Action No. |
| | ) | 1:10-CV-511-GBL-TRJ |
| REXAM PLC, *et al.*, | ) | Pending in the United States |
| | ) | District Court for the |
| *Defendants* | ) | Eastern District of Virginia |

### PLAINTIFFS' [Redacted] BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL DOCUMENT PRODUCTION FROM "ABC CORPORATION"[*]

#### I.      INTRODUCTION

Plaintiffs MeadWestvaco Corporation and MeadWestvaco Calmar, Inc. (collectively,

"MWV") seek the Court's assistance in enforcing a Rule 45 subpoena directed to ABC

Corporation ("ABC Corp."). (*See* Exhibit 1.)  The subpoena relates to a patent infringement

action pending in the Eastern District of Virginia, involving invisible dip-tubes used in fragrance

packaging (the "Main Case").  Two of the defendants in the Main Case, Valois of America, Inc.

and Valois SAS (collectively "Valois"), claim that their products do not infringe the MWV

patents because after the patents issued on May 25, 2010, Valois began using a new dip-tube that

it claims is not manufactured by "quenching" and, thus, does not read on the claims of the

patents.  Valois identified ABC Corporation Europe ("ABC Corp. Europe")—a wholly-owned

subsidiary of ABC Corp.—as the supplier of both Valois' old and new dip-tubes at issue.  In

---

[*] The identity of the subpoenaed third-party who is the subject of this motion has been designated "Highly Confidential" by Defendants Valois of America, Inc. and Valois SAS in the main action in the Eastern District of Virginia.  Accordingly, MWV has identified the third-party as simply "ABC Corporation" and its subsidiary as "ABC Corporation Europe" in this public filing, and contemporaneously is filing a consent motion for leave to file under seal an unredacted version identifying the third-party and its subsidiary by their true names.

response to discovery in the Main Case, Valois has answered that it has no documents or information detailing the process by which the dip-tubes are manufactured because that information belongs to, and resides with, ABC Corp. MWV, thus, subpoenaed ABC Corp. for documents relating to the old and new dip-tubes at issue in the case.

Although after much discussion ABC Corp. finally produced some documents on December 17, 2010, its production is deficient in three material respects:

1)    ABC Corp. arbitrarily limited its production to documents that post-date patent issuance, despite the fact that it developed, manufactured, and sold both the old and new dip-tubes to Valois prior to the date of patent issuance;

2)    ABC Corp. did not produce documents explaining the manufacturing process for the tubes, ostensibly because those documents are either owned by or in the possession of its wholly-owned subsidiary, ABC Corp. Europe; and

3)    ABC Corp. has refused to produce documents it says can be obtained from Valois, which apparently include communications with Valois that are referenced in the documents produced by ABC Corp.

All three categories of documents are relevant and discoverable, and properly the subject of a Rule 45 subpoena, and the Court should compel ABC Corp. to produce them. Because the Main Case is pending in the "rocket docket" of the Eastern District of Virginia, time is of the essence in obtaining these critical documents. MWV has attempted to obtain ABC Corp.'s compliance without Court intervention, but ABC Corp. simply will not comply with its obligations under the Federal Rules.

## II.    BACKGROUND

The Main Case involves MWV's claims for the infringement of U.S. Patent Nos. 7,718,132 and 7,722,819, which disclose a pump assembly for fragrance products containing

virtually invisible dip-tubes.  Each claim of the asserted patents requires that the manufacturing

process for the dip-tubes include an "extruding" and "quenching" step.  Valois has asserted that

its accused products do not infringe MWV's patents because, shortly before the patents issued in

May 2010, Valois began using a new dip-tube in its products that was manufactured without

quenching.  (*See* Valois' Amended Answer and Counterclaims to Second Am. Compl., ¶¶ 23-27,

copy attached as Exhibit 2.)  Valois is seeking a declaratory judgment in the Main Case that this

new tube does not infringe MWV's patents.  (*See id.*, ¶¶ 21-27.)

According to Valois, the old and new dip-tubes used in its accused products were all

manufactured by ABC Corp. Europe.  Valois has produced some communications with ABC

Corp., but has consistently maintained before the Court in the Main Case that the key

information regarding how the tubes in question are made is available only from the supplier.

(*See* Exhibits 3 and 4, Tr. of Oct. 22, 2010 Hrg, at 27-36, and Tr. of  Oct. 29, 2010 Hrg. at 2-4;

Exhibit 5, Valois' Opp. to Plaintiffs' Motion to Compel, at 8-10, 13; Exhibit 6, Valois' Response

to Mot. to Compel, at 5.)  Indeed, even after the Court in the Main Case ordered Valois to use its

best efforts to obtain the necessary information from ABC Corp., (*see* Ex. 3, at 33), Valois was

able to produce only an additional 15 pages.  (*See* Exhibit 7, Letter from H. Abrams to S.

Spalding.)

MWV served ABC Corp. with a subpoena for the relevant documents, but ABC Corp.

objected to, among other things, producing documents in the possession of ABC Corp. Europe

and documents that could be obtained from Valois.  (*See* Exhibit 8, Letter from W. Klett to S.

Spalding, at 1.) MWV asked ABC Corp. to reconsider its objection to producing documents

possessed by ABC Corp. Europe.  (*See* Exhibit 9, Letter from S. Spalding to W. Klett.)  ABC

Corp. refused, but stated that it would "request that ABC Corp. Europe voluntarily provide

*Valois* with responsive information." (Exhibit 10, Letter from W. Klett to S. Spalding, at 3 (emphasis added).)

When ABC Corp. still had not produced any documents, MWV contacted ABC Corp. to ascertain which of its objections ABC Corp. was standing on, and when ABC Corp. would be producing the documents that were not subject to its objections. During the parties' telephonic conference and in a letter dated December 8, 2010, ABC Corp. stated that it would produce responsive documents by December 17, subject to its objections to producing documents in the possession of ABC Corp. Europe or Valois. (*See* Exhibit 11, Letter from W. Klett to S. Rewari.)

On December 17, 2010, ABC Corp. produced 570 pages of documents.[1] None of them predated May 2010. None of them described or detailed the process by which the old or new tubes are made. It was also clear from ABC Corp.'s production that communications between ABC Corp. and Valois, specifically referenced in ABC Corp.'s own documents, had not been produced.

In a final attempt to persuade ABC Corp. to produce these critical documents, MWV conferred with ABC Corp. telephonically on December 23, 2010, and also followed up the call with a letter. (*See* Exhibit 12, Letter from S. Rewari to W. Klett.) ABC Corp. made clear on the call, however, that MWV would have to file a motion to compel the production of those documents.

Because none of ABC Corp.'s objections have any merit, and because the requested documents are relevant, discoverable, and centrally important to MWV's case in the Main Case,

---

[1] ABC Corp. did not provide a log of documents withheld under a claim of privilege, but it subsequently indicated that a log would be forthcoming. MWV thus reserves the right to challenge the adequacy of the log and the propriety of any claims of privilege asserted by ABC Corp.

MWV respectfully requests that the Court overrule ABC Corp.'s objections and compel it to produce *all* documents reasonably responsive to MWV's subpoena.

### III.     ARGUMENT

**A.     Documents Predating the Issuance of the Patents-in-Suit, Including Manufacturing Documents, Are Relevant and Discoverable.**

One of the core issues in this case is whether the dip-tubes manufactured by ABC Corp. for Valois are "quenched." It appears from Valois' representations in the Main Case that the sole source of information regarding the manufacturing process is ABC Corp. There is no dispute that ABC Corp. has documents regarding the dip-tubes, both old and new, predating the May 2010 patent issuance and that those documents reflect design, development, and manufacturing of the tubes. In fact, the new tube was designed because of the pending patent applications and their impending approval. ABC Corp., however, contends that any pre-May 2010 documents are irrelevant because "there can be no infringement of a patent prior to issuance" and because MWV is not seeking pre-issuance damages in the Main Case. (*See* Exhibit 8.) Neither of these arguments justifies ABC Corp.'s refusal to produce any documents predating May 2010.

Whether the accused dip-tubes are "extruded and quenched" during manufacturing is one of the central issues in the Main Case, and this issue can only be argued by reference to the actual process used to manufacture the dip-tubes—evidence of which is apparently held only by ABC Corp. The process used to manufacture the dip-tubes did not arbitrarily begin when the patent issued in May 2010; to the contrary, it was ongoing at that time. MWV is entitled to all documents related to the manufacturing process, regardless whether they were generated before or after the date the patent was issued.

These pre-May 2010 documents are essential to MWV's claims, as well as its defenses to Valois' counterclaims for declaratory relief that the new tubes do not infringe MWV's patents.

Thus, they easily pass the liberal standard of discoverability under the Federal Rules.  Indeed, the U.S. District Court in the Main Case already has rejected Valois' arguments that documents pertaining to the old tubes (which Valois says it stopped using in May 2010) are irrelevant and ruled that MWV is entitled to discovery of those documents.  (*See* Exhibit 3, at 33-34; Exhibit 4, at 19-20.)  Because documents related to the design, development, and manufacture of the accused products are relevant, regardless of their date of creation, MWV requests that the Court compel ABC Corp. to produce responsive pre-issuance documents.

**B.    ABC Corp. Must Produce Documents Held By Its Subsidiary, ABC Corp. Europe.**

ABC Corp. also refuses to produce documents possessed by ABC Corp. Europe, which documents are squarely in ABC Corp.'s possession, custody, or control.

A request for documents under a Rule 45 subpoena extends to documents within the subpoenaed entity's "possession, custody, or control."  Fed. R. Civ. P. 45(a)(1)(A)(iii); *Sensormatic Elecs. Corp. v. Tag Co. LLC*, No. 4:07-mc-181, 2008 U.S. Dist. LEXIS 5312, at *3 (D.S.C. Jan. 24, 2008).  Thus, the information sought need not be "in the physical possession of the non-party from whom discovery is sought," but only in its "control."  *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000).  "Control" is broadly construed as the legal right, authority, or practical ability to obtain the materials sought upon demand.  *Credit Bancorp*, 194 F.R.D. at 471; *Florentia Contracting Corp. v. Resolution Trust Corp.*, No. 92 Civ. 1188, 1993 WL 127187, at *3 (S.D.N.Y. Apr. 22, 1993).  "This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation."  *Credit Bancorp*, 194 F.R.D. at 472; *see also generally Gerling Int'l Ins. Co. v. Commissioner of Internal Revenue*, 839 F.2d 131, 140-141 (3d Cir. 1988) (discussing

"control" in cases involving discovery directed at corporations related as parent and subsidiary and as sister corporations).[2]

There is little dispute that documents held by a wholly-owned subsidiary are within the "control" of the parent for purposes of discovery.  Courts have held that "[a] corporation must produce documents *possessed by a subsidiary that the parent corporation owns or wholly controls*."  *United States v. Int'l Union of Petro. & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (emphasis added); *see also Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 305 (M.D.N.C. 1998) (noting that parent corporations have "absolute legal control" over documents in the possession of a subsidiary); *Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 637 (D. Md. 1978) ("The fact that we are dealing with separate corporate entities here is irrelevant.… Here the documents in question are under the control of [the parent].  They are, therefore, subject to production.") (internal citations omitted); *Am. Angus Assn. v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C. 1994) ("[A] litigating parent corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent.") (internal citations and quotations omitted).

While it is clear that a parent has legal control over a subsidiary's documents, the concept of "control" is not limited to just parent/subsidiary relationships.  *See Steele Software Sys. Corp. v. Dataquick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006).  Instead, where the corporations are not parent and subsidiary, courts will consider a number of factors to determine whether one corporate entity has control over the documents of another.  *Id.* at 564.  These

---

[2] While a number of these cases address control in the context of Rule 34, the scope of discovery under Rule 45 is co-extensive.  *See Credit Bancorp*, 194 F.R.D. at 472; *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998); *Nagy v. Baltimore Life Ins. Co.*, 49 F. Supp. 2d 822, 825 (D. Md. 1999) ("It is well-settled that 'the scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules.'").

include: (1) the corporate structure of the party/nonparty, including commonality of management; (2) the nonparty's connection to the transaction at issue in the litigation; (3) any benefit or involvement by the non-party corporation in the transaction; (4) whether the related entities exchange documents in the ordinary course of business; (5) whether the nonparty has participated in the litigation; and (6) whether the subsidiary has an interest in the litigation.  *Id.*; *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986); *Uniden*, 181 F.R.D. at 306-07.  Further, commonalities between the companies, including any overlap of directors, officers, and employees, and the financial relationship between the two entities, weigh in favor of a finding of control. *Steele Software Sys.*, 237 F.R.D. at 564; *Afros S.P.A.*, 113 F.R.D. at 130.

In this case, all available evidence demonstrates that ABC Corp. has possession or control of ABC Corp. Europe's documents.

### 1.    ABC Corp. Europe is a wholly-owned subsidiary of ABC Corp.

In ABC Corp. Europe's annual return, filed with the Companies Registration Office in Europe, it has represented to the European authorities that all of its outstanding shares are owned by ABC Corp.  (*See* Ex. 13, Annual Return filed Oct. 27, 2009, at 2-3.)  Based on public filings such as this, ABC Corp. Europe appears to be wholly owned by ABC Corp.

### 2.    All the other control factors demonstrate ABC Corp.'s control over ABC Corp. Europe.

Notwithstanding these public records, ABC Corp.'s counsel has stated that he does not believe ABC Corp. Europe is a subsidiary of ABC Corp.  Even if that is true, the other relevant factors still demonstrate that ABC Corp. has control over documents in ABC Corp. Europe's possession.

a.     *ABC Corp. Europe Shares Common Management With ABC Corp.*

First, there appears to be enormous overlap in both companies' management.  All three of ABC Corp. Europe's directors are also directors of ABC Corp.  (*See* Exhibit 13, at 4.)  One of ABC Corp. Europe's directors is himself the President of ABC Corp.  (*Compare* Exhibit 13, Annual Return submitted by ABC Corp. Europe, with Exhibit 14, Corporate Status Report for ABC Corp.)

b.     *ABC Corp. consistently portrays ABC Corp. Europe as nothing more than its [European] facility.*

ABC Corp. and ABC Corp. Europe hold themselves out to the public, and appear to operate, as a single entity.  ABC Corp.'s website states, **"**Headquartered in South Carolina, ABC Corp. operates multiple facilities in North America and internationally that guarantee a stable source of supply to customers anywhere in the world. . . . *ABC Corp. now operates* 10 facilities on seven campuses worldwide in the United States, [*Europe*], and China."  (Copy attached as Exhibit 15) (emphasis added).  ABC Corp.'s European facility is listed on its website next to its U.S. facilities in New Jersey and South Carolina, with the South Carolina site identified as "Headquarters."  (Copy attached as Exhibit 16.)  Moreover, the website offers a single product catalog (offered in different languages) for all of ABC Corp. and ABC Corp. Europe's products. (Copy attached as Exhibit 17.)

Recent press releases posted on ABC Corp.'s website further confirm that ABC Corp. regards ABC Corp. Europe as part of the same company.  For example, in a press release dated October 28, 2010, ABC Corp. stated that its "core business is the development and precision extrusion of advanced polymeric materials.  *The company employs 1,200 people worldwide with facilities in South Carolina, New Jersey, [Europe],* and a sales office in China."  (Copy attached as Exhibit 18 (emphasis added)).  In another press release, dated March 24, 2010, ABC Corp.

touts its "international presence in *Europe* and Asia" and boasts "*a manufacturing facility and sales office in [Europe]*."  (Copy attached as Exhibit 19) (emphasis added)).  Finally, in yet another press release, ABC Corp. announces its expansion of its operations in Europe, and makes no reference to the alleged corporate distinction between the two entities.  (Copy attached as Exhibit 20.)

Thus, ABC Corp.'s own public statements belie its claim that it does not have control of documents held by ABC Corp. Europe.

> c.     *ABC Corp. and ABC Corp. Europe are more than mere third party witnesses.*

Apart from parent/subsidiary relationships, two related but separate entities who acted as one during the events underlying the primary litigation can also be deemed to be in control of one another's documents.  *See Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983) (compelling discovery in possession of sister corporation where both entities participated together in the actions underlying the suit, in part because the corporate form should not be used as a shield for otherwise discoverable documents).  Similarly, "[i]f a non-party will directly receive the benefit of an award, then it is unjust that it can frustrate the discovery process and the complete resolution of the issues by refusing to furnish documents in its possession."  *Afros S.P.A.*, 113 F.R.D. at 131.

Here, ABC Corp. and ABC Corp. Europe serve as Valois' sole manufacturer and supplier of the dip-tubes for the accused products.  The process by which ABC Corp. manufactures the tubes in question is central to MWV's infringement claims, as well as Valois' claims for declaratory relief.  As a result, ABC Corp. is not a mere bystander to this litigation, but instead ABC Corp. and its documents are core pieces of evidence in the Main Case with Valois.

Moreover, ABC Corp. and ABC Corp. Europe acted hand-in-hand in their actions related to the Main Case, essentially acting as one company.  For instance, both entities were involved in attempting to design around the patents-in-suit, even if the accused products were later manufactured only in Europe.  (*See* Exhibit 21, Copies of emails produced by Valois.)

The work ostensibly being performed by ABC Corp. Europe for Valois is pursuant to a contract and purchase orders issued to ABC Corp.  (*See* Exhibits 22 and 23.)  The old tubes originally used in Valois' products were manufactured originally in the United States by ABC Corp., and the manufacturing function was subsequently transferred to the European facility.  (*See* Exhibit 24.)  ABC Corp. employees from the United States and Europe met with Valois representatives in South Carolina, as well as Europe, to develop the new tubes, to discuss problems associated with the new tubes and explore other design-around alternatives.  (*See, e.g.,* Exhibit 22, and Exhibit 25.)  As in *Alimenta*, ABC Corp. and ABC Corp. Europe's joint effort to develop the accused products does not comport with ABC Corp.'s assertions that ABC Corp. Europe is an entirely separate legal entity.  99 F.R.D. at 313.

Moreover, ABC Corp.'s principal scientist, John Doe, who was deeply involved in the development and design of the tubes at issue, also is resident in the United States.  (*See, e.g.,* Exhibit 27.)  When asked why ABC Corp. had failed to produce certain data that Mr. Doe had apparently collected in response to MWV's subpoena—as indicated in a document produced by ABC Corp.—ABC Corp.'s counsel replied that Mr. Doe is a joint employee shared between ABC Corp. and ABC Corp. Europe, and that the documents in question were not produced, even though they were located in the United States, because they belonged to ABC Corp. Europe.[3]

---

[3] Indeed, two documents produced by ABC Corp. already expressly reference materials responsive to the Subpoena that have been withheld.  For instance, one document indicates that Mr. Doe has "T&E" data, (*see* Exhibit 27), but ABC Corp. claims that this material belongs to

The fact that ABC Corp. shares employees and documents with ABC Corp. Europe further demonstrates that ABC Corp. does, in fact, have control—if not possession and custody—of documents held in the name of ABC Corp. Europe.

Both ABC Corp. entities have a strong interest in the outcome of the Main Case. Not only is Valois a major customer, but if Valois is enjoined from selling, making, or offering to sell pump assemblies that use ABC Corp.'s invisible dip-tube, neither ABC Corp. entity will be able to manufacture and sell its dip-tubes to Valois. As the contract-holder and the recipient of the purchase orders pursuant to which the dip-tubes are being sold to Valois, ABC Corp. will be directly affected. As the facility where the tubes are being manufactured, ABC Corp. Europe will also be impacted directly. Accordingly, both ABC Corp. entities have a clear stake in the outcome of the Main Case. Because ABC Corp. is not a third party in the ordinary sense of the term, but rather an entity involved in the Main Case with a vested interest in its outcome, ABC Corp. should not be permitted to shield relevant information from discovery under the claim that the information belongs to ABC Corp. Europe.

**C.    ABC Corp. Must Produce its Documents Even if They are Available from Valois.**

Finally, ABC Corp. refused to provide responsive documents on the grounds that they should be obtained from Valois. ABC Corp.'s objection is essentially about burden, but that objection is without merit. As an initial matter, ABC Corp. has not identified the requested documents that are available from Valois. Indeed, Valois already has told the Court in the Main Case that it does not have the key information at issue—showing how the dip-tubes in question

---

ABC Corp. Europe. Another document references "BBP," which appears to be a set of manufacturing instructions. (*See* Exhibit 28.) It is unclear why these documents have not been produced.

are made—and that such information can only be obtained from its supplier.  (*See, e.g.,* Exhibit 5, Valois Response to Pls.' Motion to Compel, at 5.)

But even if ABC Corp. could identify what documents are also available from Valois, and confirm that Valois actually has those documents, that does not relieve ABC Corp. of its own duty to respond to MWV's subpoena.  As the subpoenaed party, ABC Corp. bears a "heavy burden of establishing that compliance with the subpoena would be 'unreasonable and oppressive.'" *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enters., Inc.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995).  Nothing in Rule 45 suggests that a subpoena recipient can withhold responsive documents merely because some of the requested documents can be obtained from another source.  In fact, it was probably more burdensome for ABC Corp. to separate out from the pack of documents it produced on December 17, communications to or from Valois than to simply produce them.

To determine whether a production subpoena presents an "undue" burden on the producing party, courts consider a variety of factors, including: (1) the relevance of the information requested; (2) the need of the party for the production; (3) the breadth of the request for production; (4) the time period covered by the subpoena; (5) the particularity with which the subpoena describes the requested production; and (6) the burden imposed.  *See* 9-45 Moore's Federal Practice - Civil § 45.32 (collecting cases and factors).  Applying the relevant factors, MWV's request for responsive documents, including those that are possibly in Valois's possession, is not unduly burdensome.

### 1.    The relevance of the requested information is undisputed.

ABC Corp. has not objected to the relevance of any of the requested documents, let alone the subset of documents that may also be in Valois' possession.  There is thus no dispute that any

such documents, which would have been exchanged between Valois and ABC Corp., are relevant to the Main Case.

As noted above, whether or not the accused dip-tubes are "extruded and quenched" during manufacturing is one of the central issues in the Main Case. Because MWV's subpoena to ABC Corp. focuses on the manufacturing process, any responsive ABC Corp. documents are unquestionably relevant, and may, in fact, be indispensable to proving MWV's infringement contentions. Similarly, design and development documents, sales and pricing information, samples, and the other categories of requested documents that may have been communicated to or from Valois will provide vital evidence on the issues of patent infringement, validity, willfulness, and damages.

### 2.     MWV's need for the evidence is critical.

As noted above, the requested evidence is essential to MWV's case. Moreover, as detailed below, the documents are not readily available through any other means.

### 3.     The scope of the document requests is as narrow as possible.

MWV has narrowly tailored its subpoena requests. It seeks only 15 discrete categories of documents, all of which relate to fluoropolymer dip-tubes, the patents-in-suit, or the manufacturing process. Plus, the vast majority of MWV's requests are date-restricted to within the past year. Importantly, ABC Corp. objects to the breadth of the subpoena only to the extent it encompasses documents Valois may also have. Given the importance of the requested documents, and that ABC Corp. has failed to identify, much less prove, what documents are available from Valois, MWV's request for all responsive documents is reasonable.

### 4.     The time period covered by the subpoena is narrowly circumscribed.

As mentioned above, the vast majority of requests are limited to less than one year's worth of documents.

**5.      The requests are as precise and particular as possible.**

MWV's requests are very specific.  Where possible, the requests state the relevant time

frame, as well as the particular types of documents requested.  Indeed, the requests could not

have been more narrowly tailored without sacrificing documents crucial to the Main Case.

Notably, ABC Corp. has not objected to the particularity of the requests.

**6.      The burden on ABC Corp. to produce the requested documents is minimal.**

ABC Corp. has already agreed to produce all responsive documents it deems not to be in

Valois' possession.  Accordingly, the issue is how much more burdensome would it be for ABC

Corp. to also produce the documents supposedly possessed by Valois.  Given the narrow scope

and limited date range of the subpoena, this burden is negligible.  Indeed, it may actually take

*more* effort for ABC Corp. to locate and cull out the documents it contends are in Valois's

possession than to simply produce all the documents together.

Importantly, ABC Corp. has not explained how it selected documents it did not provide

under this objection.  ABC Corp. has not shown, and cannot show, that the withheld documents

are actually in Valois' possession.  In other words, ABC Corp. withheld documents on the basis

of a speculation that they are available from Valois.

Given the importance of the withheld documents, the particularity of the requests, the

minimal burden on ABC Corp. of having to produce them, and ABC Corp.'s unwillingness (or

inability) to confirm that objected-to documents are even in Valois' possession, ABC Corp.'s

objection should be overruled.

## IV.    CONCLUSION

Documents predating issuance of the patent-in-suit are relevant and discoverable, and

ABC Corp. should be ordered to produce them.  ABC Corp. further should be ordered to produce

responsive documents within its possession, custody, and control, including those nominally held

by ABC Corp. Europe and those documents it possesses that may also be available from Valois.

     Dated: January 6, 2011

                       Respectfully submitted,

                       MEADWESTVACO CORPORATION
                       MEADWESTVACO CALMAR, INC.

                       By: /s/ David H. Koysza
                          David H. Koysza (D.S.C. Id. No. 9893)
                          Martin M. Tomlinson (D.S.C. Id. No. 10869)
                          Wyche Burgess Freeman & Parham, P.A.
                          Post Office Box 728
                          Greenville, SC  29602-0728
                          Telephone: (864) 242-8384
                          Facsimile: (864) 235-8900
                          E-Mail: dkoysza@wyche.com;
                          mtomlinson@wyche.com

                          Of counsel:
                          Thomas G. Slater, Jr. (VSB No. 05915)
                          Shelley L. Spalding (VSB No. 47112)
                          Hunton & Williams LLP
                          Riverfront Plaza, East Tower
                          951 East Byrd Street
                          Richmond, Virginia 23219-4074
                          (804) 788-8200
                          (804) 788-8218 Fax

                          Michael P.F. Phelps (VSB No. 45750)
                          Sona Rewari (VSB No. 47327)
                          Hunton & Williams LLP
                          1751 Pinnacle Drive
                          Suite 1700
                          McLean, VA  22102
                          (703)714-7472
                          (703)714-7410 Fax

                          Michael A. O'Shea
                          Hunton & Williams LLP
                          1900 K Street, NW
                          Washington, D.C. 20006-1109
                          (202) 419-2183
                          (202) 778-7434 Fax